Case number 16-5018, Silver State Land, LLC, Appellant v. Janice M. Schneider and her official capacity as Assistant Secretary, Land and Minerals Management and Nail Quarantine and his official capacity as Principal Deputy Director. Mr. Smyth for the Appellant, Mr. Bielert for the Appellee. Mr. Smyth, good morning. Good morning, Your Honors. May it please the Court, my name is Paul Smyth from the Perkins Coie Law Firm. I'm representing Silver State Land, the Appellant in this matter. May it please the Court, my name is Paul Smyth from the Perkins Coie Law Firm. I'm representing Silver State Land, the Appellant in this matter this morning. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. This morning, I would like to make three key points. First, the Secretary's action to withdraw a sale at which my client paid $10 million for 480 acres of public land was directly in violation of the applicable statute. That's 203G? 203G, 43 U.S.C. 1713G. I wanted to be I very much do, Your Honor. And I'm going to discuss that more in just a second. My second point will be that the Justice Department uses post hoc rationales to support its arguments that Section 203G does not apply here. Basically, they try to support the unsupportable secretarial decision. And lastly, even if the Secretary's theory that she can apply is plenary authorized in this case, she did not meet the terms of the cases that she cited. In particular, the Appellant here was not provided any due process. Did I ask you about the notification? Because the notice itself said, if no acceptable bid is received, the parcel may remain available for sale at a future date in accordance with a competitive sales procedure without further notice. Now, that's different from withdrawal. Or are you arguing it's not? No, I'm arguing that that does not constitute the withdrawal. It means to take the original sale back. What the Justice Department argues is that the fact that the Secretary put it back on the market is not the type of withdrawal in Subsection G, where our position is that she removed the sale from our client and then turned around and said, oh, I'm going to reoffer it. Well, she didn't turn around. That was in the notice. Correct. That was in the decision. All right. So that's not a withdrawal. No, she did withdraw. Withdrawal, our argument is that when she canceled the sale, she withdrew the sale of the land. She terminated that arrangement. She didn't withdraw the land. She did withdraw the land from sale. No, she didn't. She terminated the arrangement with your client. That's right. But the land was not withdrawn. Yes, it was, Your Honor. Now, let me get to this point. The district court would have said that withdrawal in Subsection G means a withdrawal under Section 204 of the Federal Land Policy and Management Act, 43 U.S.C. 1714. The withdrawal authority under 1714 is to transfer land to another agency or to protect the land from harmful uses. So, for example, if the land had been withdrawn within the meaning of Section 204, it might have been placed into a military base, it might have been placed into a national park, or special restrictions might have been placed on the land to preserve its natural values, such as the creation of a national conservation area. It's clear that the withdrawal is defined in the Act as a noun, and it means to preserve the lands in the ways I just described. Here in Subsection G, the Congress uses the verb to withdraw, and that is not defined, and we argue that that has its plain meaning, to take back the sale. So what the Secretary did here is withdraw within the meaning of take back. Subsection G does not require the Secretary to put the land into a national park in order to take it away from our client. She only had to basically terminate, take back, call off the sale. Well, that sounds like a different definition from withdrawal. Yeah, there's the verb to withdraw, which is in Subsection G, and then there is the term of art in public land law, a withdrawal, which is a noun. I thought you were saying withdrawal. I thought your position was withdrawal and withdrawal mean the same thing. No, it is not. Our position is that the verb to withdraw means simply in plain English to take back, that the term withdrawal in 43 U.S.C. 1714 is a special, is a term of art in public land law that means basically to reserve or set aside land to make it unavailable for certain uses, such as mining. I don't see how withdrawal has a discrete meaning, a term for that statute specifically, and you use the verb of that. If the definition of withdrawal then went on to say, and to withdraw you first have to do such and such, you wouldn't argue that that verb to withdraw meant something different from the alternative meanings of withdrawal, would you? Well, I'm not sure that's the case, Your Honor, and if I may. Well, it isn't. It's in a different provision. I realize that, but we've got to. Well, let me make another point about withdrawal as used in Subsection G. For the secretary to effect a withdrawal, a noun, in 1714, that is a full process-laden requirement. There's reporting to Congress. Typically an environmental impact statement is done. It's in Congress that that kind of process would be necessary and could even occur within 30 days. The statute gives the secretary 30 days to withdraw the sale. At that point, and here, Your Honor, keep in mind that the appellant's bid offer was accepted by the department. So we basically, and then once the 30 days expired and there was no withdrawal within the 30 days or no taking back of the sale within the 30 days, in essence, the sale was to be consummated at that point. Where does the statute say that? Where does it say that after the 30 days, you're done? You're home. You have, in effect, a legal transfer as opposed to a... Your Honor, it doesn't say that. Justice argues that, oh, the statute doesn't say that this withdrawal must be exercised only within 30 days. So they would have this be untethered to any time constraint. But you have the problem is you have the foundation of plenary authority there, sitting there, and it seems to me indisputable. And so you have this particular provision which says, if something can happen within 30 days, does not speak to the larger question of what happens after 30 days and the plenary authority is still there. I'm happy to address plenary authority and your point, Your Honor. Plenary authority comes out of primarily 19th century case law, and it says that the secretary... Is that bad? Is that bad? No, it's not bad. It's just a long time ago. Yes, there's a history of it. But the key cases in both the government and our side both cite the Orchard v. Alexander case. And in Orchard, the court specifically makes clear that plenary authority may not be used to nullify an act of Congress. And that's at 152 U.S. 383-84. That's the specific statement. Because your argument is that G is exclusive and it deals with the period within the 30 days and also thereafter. I mean, that's the argument. Well, I'm not done yet with why plenary authority doesn't apply. The second part is that plenary authority, the Federal Land Policy and Management Act, where Section G comes from, was enacted in 1976. It repealed all of these old public land laws. And in its place, Congress put new authority how to conduct a public land sale. Now, if the secretary wanted to retain this plenary authority post-Federal Land Policy and Management Act, she should have put that in her regulations like she did for the mining law of 1872. The mining law... So the government cites us to 1701B, indicating that the act is supplementary. Yes, but it is supplementary. But when there's specific congressional direction, that would apply. That's the first argument, that the statute does apply and knocks out plenary authority. The second argument... No, no, no. I'm sorry. All I'm saying is the government cites you to the purpose section where in subsection B, it doesn't say, and this wipes out any prior authority. It says this is supplementary authority. At least that's the argument that's being made. I understand that argument, Your Honor. What I'm trying to address is that even if that were true, even if the secretary had room to exercise plenary authority here, that she had to not nullify any act of Congress. She has to follow her own regulations, which were not followed in this case. Her regulations in this case, when she took jurisdiction of this matter from the BLM, the regulation 43 CFR 4.5C says the secretary, upon taking jurisdiction, must give notice to the parties and hold a hearing where necessary. And given the fact that this whole thing was triggered by the secretary's serious questions about the intent of the parties in going ahead with this stadium transaction, you would think that the secretary had the full ability to hold a hearing and to have those questions answered to her satisfaction. The third reason that plenary authority doesn't apply is because even under plenary authority, the decision may not be arbitrary. So the mere assertion of plenary authority does not get around whether the statute applies or not here, subsection G, does not get around the fact that the secretary did not incorporate this plenary authority in her regulations for public land sales. And I ask you to compare that with the regulations for the mining law. The mining law has the exact same language. We're talking about this plenary authority stuff until the patent is issued, the secretary has full ability to call back the transaction. And the cases cited by the government that are post-Federal Land Policy and Management Act, all are mining law cases, and they all apply the modern regs, the post-1976 regulations, where the secretary clearly embodied the plenary authority into her review of mining claims. Except that you align on the thoroughness of the LPMA. Yes. Which itself says in 1701B that it's not supposed to be a derogation of existing precedent. Well, and I would say, Your Honor, that we have a general versus specific type thing here. The plenary authority arises from general statutes about the secretary's supervision of the public lands. And so they're general. It's sort of like the secretary can fill in the blanks where necessary. At the time the plenary authority was created, there was no Administrative Procedure Act. There was a question about whether the secretary actually had the ability to step in and review something. Those courts in the 19th century sustained that. Now we have a more modern era where Congress through the Administrative Procedures Act and other things have defined how the secretary is supposed to conduct business administratively. So we basically have a situation where this plenary authority was just pulled out of the air in this case as an excuse to nullify the sale because of the secretary's concerns. There was an ongoing Inspector General report or investigation at the time the patent was due to be delivered. And our view is that they just came up with this theory out of thin air based on a 1976 Apartment Manual and threw that out there to stop this transaction. And now the Inspector General has issued this report after two or three years and has basically installed Silver State in any wrongdoing in this matter. So it's basically time to allow this transaction to go forward. There was no degradation of public rights. Silver State paid fair market value. The land is zoned for a stadium. It's still awaiting that. The city of Henderson is in favor. And the land is still available for disposal under the secretary's authority. The problem for the secretary was that the land was supposed to be given to your client pursuant to a process that is exceptional. That is, there was a stated reason. And that stated reason disappeared. This is not the way the bidding process normally would have occurred. Well, what happened there, Your Honor, is with the termination of the project, the sale itself went forward with no other competitive bidders. The high bid was Silver State. This is not the way you would normally bid, though. Well, there weren't any other bidders. It doesn't matter. It was clearly done on exceptional process because of something that your client asserted, which turned out not to be true. In fact, pretty fast. A day later, the client said, no, I'm out of here. That was six months after the sale, Your Honor, because the escrow agreement required six months to put the final payment into escrow. So it was after the escrow payment. Right. But it was six months after the auction in the case. And it was during the six months that Silver State's financing to do the stadium fell through. They were going to face a penalty of $1 million that they'd have to pay to the city of Henderson if they didn't meet the construction requirements. So they terminated the sale and wrote Henderson to say, we still want to go ahead with this thing. We're trying to avoid this penalty that's in our agreement. Your Honor, I'm out of time at the moment. Can I just ask you one thing? Yes. I didn't see it in your briefing. On the interpretation of withdrawal, withdrawal, do you see that as a Chevron 1, Chevron 2? I would say that it's a Chevron 1. I mean, because there's no interpretation really that – well, the Secretary didn't exercise any kind of Chevron here. She didn't promulgate a rule. If she promulgated a rule that said what you're saying, maybe she could have shoehorned this in. But without a rule, there's nothing to give deference to, just an interpretation out of thin air. Well, I'm talking about your interpretation of the verb withdraw, which is different from the noun withdraw. Well, I would point to, I think, the regulation you cited me up front, where the BLM said when the sale is terminated or the sale is withdrawn, it says, that the Secretary should make a decision about whether to return it to the market or not. So that's a very important regulation that I point the court to, where the Secretary basically interpreted withdrawal not to mean a 204 withdrawal and not to mean just for market. All right. We'll give you some time to reply. Thank you. Mr. Bielert. Good morning, Your Honor. My name is Jeff Bielert. I'm here on behalf of the federal defendants. With me at counsel table is Ryan Sklar from the Department of the Interior. When Congress contemplated the federal government selling federal lands, it required the government to use competitive bidding. In this case, the government did not use competitive bidding because, as Judge Edward points out, it used an exception. It allowed modified competitive bidding, and it allowed that modified competitive bidding because of the agreement that the developer had with the city of Henderson. When the developer terminated that agreement, it not only removed the public benefit that that agreement contemplated, but it jettisoned the legal basis by which it was allowed to have its special status at this bidding. And what the Secretary did here, after the city came to the government and said, do not let this go forward, there was a number of ESCO agreements, two of which were at Silver State's request, that allowed this state litigation to go forward, but also allowed the parties to find a way to resolve their dispute. And the Secretary, at the end of that period, looked at it and was given a recommendation from the Bureau of Land Management to assert her jurisdiction, which she could do under regulations. We've talked about it, 43 CFR 4.5. And it allows the Secretary to take basically authority over a decision that is pending and render a final decision. The Secretary complied with the requirements of 4.5. And I note that counsel brings up 4.5C in his due process argument. That argument was raised in his reply brief. It doesn't appear in his opening brief. And I would argue, first of all, that it's waived. Second of all, the Secretary complied with 4.5C. And we know the Secretary complied with 4.5C because the Secretary issued a written decision. The counsel complains it's a one-page thing, but they received a letter letting them know what the Secretary had done, giving the decision. And you can find that at JA664 to 672. That's the letter that they received. It includes an explanation of why the Secretary acted. It also includes a copy of that decision memo. The decision memo lays out, in reasonable terms, why the Secretary did what she did here. We've got it in our brief. You can find it at JA671. The memo talks about the fact that the Secretary has broad plenary authority over the administration of public lands. Judge Edwards recognized this. The case law is well-established. It's a longstanding principle. And under Silver State's reading, it would create an absurd result if you read Section 1713G  Because imagine a scenario where you've got sort of the repentant fraudster who comes forward and says, oh, the 30 days have expired. You haven't issued the patent. I committed fraud in getting this patent. Under their reading, the Secretary would not be allowed to cancel that sale. And that can't be right. The Secretary maintains authority over public lands. That authority, we trace it back to Cameron, Supreme Court's decision in Best, talked about Orchard. And those cases rely on, it's true, general statutory provisions. But what those provisions say, if the court looks at them, and the district court did that below, at JA63, there's Section 1457 and 43 U.S.C. 2. The duty the Secretary has over public lands. And the Secretary has a very unique responsibility as the guardian of the federal government's supervision of federal lands. So you're relying on these case citations. You're not relying on any statutory or regulatory statement of this authority, are you? Well, Your Honor, two things. First of all, when you look at the decision memo, it does cite, as counsel recognized, to the manual. But then there's sort of a string of case citations. When you go and look at Cameron, it does discuss the statutory basis, this general. And the argument there is that the statute, the statutes were a mess. Nobody knew what was going on. So Congress steps in and passes this comprehensive statute. And so the argument is those cases were looking at a statutory regime that no longer exists. So I understand your absurdity argument, but just looking at the facts of this case, does it mean that no matter what process a person follows under the statute or the Secretary's regulations, the Secretary can step in at any time and say, we're not going forward. Then the challenges follow. But it's that sort of umbrella authority that's nowhere stated, but it's in these old cases. And, I mean, we have a case that, in more recent times, references it. But it's like the Secretary shall do good. No, and I understand Your Honor's concern. We started out with this earlier, that the Federal Land Policy and Management Act, very clearly Congress said this is supplemental authority that we're giving the Secretary. It is true. But it refers to, it is a very broad statement, but it says construed as supplemental to and not in derogation of the purposes for which public lands are administered under other provisions of law. And when I first read that, I thought, what are those other provisions of law? And your response is, look at these old cases. Well, yes, Your Honor, and I'll point the Court's attention to 43 U.S.C. Section 2. And this is the duty, this is what Cameron discusses. And the District Court recognized this in its decision. It talks about this. It talks about where does this general authority come from. And you go to 43 U.S.C. Section 2, and I admit it's very broad, but it discusses the duties concerning public lands. And it says one of those things is issuing patents for all grants of land under the authority of the government. Where does the government's authority come from? It comes from the Constitution. It comes from the Property Clause. Well, it says Congress. Those cases you cite are talking about Congress's authority over public lands under the Property Clause. We're a step further down the road. I mean, the Secretary is not Congress. That's right, Your Honor. And so this Court's decision in Udall, and I think the Union Oil case that I cited, where it talks about Congress specifically had a choice. Who is it delegating its authority to? It's delegating it to the Department of the Interior. The Secretary from the founding of this nation going forward, the land office, all that. Congress was in the business originally of passing laws when it wanted to sell public lands. So the way I read versions of the statute is Congress didn't delegate all of its powers to the Secretary of Interior, but only certain powers. And even in this statute, Congress keeps its finger, you know, in the process. That's certainly right, Your Honor, but certainly in the context of issuing land patents. I think that the argument is that the Secretary does have plenary authority in the specific context of issuing land patents because it's a conveyance of land from the federal government to, in this case, you know, a private party. So just looking at this case, is all this Court needs to look at is the facts of this case, the five reasons given essentially by the Secretary for the action taken here, and then you would rely on Section 4.5 of the regulations. Yes, Your Honor. And that's the end of the case. Yes, Your Honor. There's no reason to get into, and I mean, I'm being accused of post hoc rationale. I respond to the arguments that were raised in their opening brief. I'm relying solely on the rationale that was put forth in this decision memorandum, and that's, there's nothing, there's no reason why this is somehow arbitrary, capricious, or not in accordance with the law. And you don't need to get to 1713G because it doesn't apply. For the same reason the Court discussed, we argue about what the word withdraw means, the verb withdraw, and I don't think that, I mean, I'll go back to look at the district court, but I don't think the government made the argument that it has to be a withdrawal, meaning take away the operation of public land laws. You know, we raised the argument that it's a termination of the sale solely because that was the argument that they pressed, and they ran away from that in their reply brief because they realized the BLM regulations that they're citing to actually says, distinguishes between terminating a sale and taking the property off the market. And in this case, the property is still available. It was in the notice of realty action. There's nothing preventing Silver State from going back to the city of Henderson and asking them to renominate and go through the process and have an open competitive bid. But that's not what they want here. What they want, they want specific performance, and they come in under the APA, and they're asking this court to demand order that we issue a patent. Well, where does that come from? How do they get there? And then you go look at Section 1718. They say that the secretary has a ministerial duty to transfer this patent. That reading of that statute is incorrect. It does not say that. What Section 1718 says is that when the secretary transfers a patent, the secretary is required to put forth terms and covenants to protect the public interest. It does not apply to this case. There's no reason why this court should not affirm the district court's decision and not require the secretary to transfer the patent in this case. All right. Thank you. Thank you, Your Honor. Does Mr. Smythe have any time? Okay. Why don't you take two minutes? Thank you very much, Your Honor. The sale remained authorized once the project agreement was terminated. First, the sale was not made contingent on the project agreement remaining in place. The government's appraisal said specifically that there's no guarantee in our appraising of the land that this project will ever be built. The notice of realty action did not advertise to the sale to the public as having any contingency. No violation of law occurred here. The secretary said had she known the facts six months sooner, that she would have likely put it forward for a competitive sale. There's nothing in the administrative record that shows that the competitive sale was contemplated by any member of the Department of Interior. The sale went ahead on a modified basis. There were no other bidders. The BLM regulations say that when there's no other, and as a result of no other bidders, Silver State did not have to exercise any preference. It did not have to trump any other high bid. And the BLM regs say if the designated bidder does not use its preference, that the sale will proceed as a competitive sale. So the Justice Department, in terms of some of the post hoc rationale I was going to point out, they say that, oh, the sale would have been, somebody else would have bid higher had it been competitive. There's nothing in the record for that. They say that Silver State bid lower because it was not a competitive sale. There's nothing in the record for that. Lastly, Section 208 is a mandatory duty. It says the Secretary shall convey and deliver patents authorized by this Act. We assert that the sale remain authorized at all times. The Secretary's decision to find it to be complicated was arbitrary and capricious and in violation of the statute. Thank you, Your Honor. All right. Thank you.
judges: Henderson, Rogers, Edwards